COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

**Gary L. KAUFMAN, Respondent.**

No. 93–1885.

Supreme Court of Iowa.

April 20, 1994.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Peter W. Berger of Berger & Culp, P.C., Des Moines, for respondent.

Considered McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

The respondent, Gary L. Kaufman, pleaded guilty to nine counts of drug offenses—most of which were felonies. As a result, the district court sentenced Kaufman to concurrent terms of imprisonment not to exceed twenty-five years. Following his convictions, Kaufman was held in contempt of court for refusing to testify against his supplier. The Committee on Professional Ethics and Conduct filed a two-count complaint with the Grievance Commission against Kaufman because of the convictions and contempt. As to the convictions, the commission recommended suspension of Kaufman's license to practice law indefinitely with no possibility of reinstatement until the latter of (1) a period of two years, or (2) Kaufman's release from prison. As to the contempt, the commission recommended a public reprimand. Upon our de novo review we conclude Kaufman's license to practice law should be revoked.

### I. *Factual Background.*

Kaufman graduated from law school in 1974 and was admitted to practice law in Iowa that same year. He held a variety of legal positions until December 1978 when he became legal counsel for the Iowa Legislative Service Bureau. At the time of his arrest, Kaufman was senior legal counsel for the Bureau.

Kaufman admittedly was (1) a recreational user of lysergic acid diethylamide (LSD), and (2) addicted to marijuana. His legal and ethical problems stemming from his drug activities began in 1992. Lee Stoddard, whom Kaufman characterized as a personal friend of about five years, called Kaufman several times about securing drugs for Stoddard. Stoddard told Kaufman he intended to give the drugs to his new "boss." Unbeknownst to Kaufman, Stoddard was working as an undercover informant. In each phone call, Stoddard implored Kaufman to buy some LSD and marijuana for Stoddard's "boss." The "boss" was in reality a narcotics officer posing as a Greyhound executive just arrived in Des Moines from San Francisco.

Kaufman resisted Stoddard's requests at first. But Stoddard ultimately convinced Kaufman—in their final phone conversation—to procure the drugs. Kaufman testified he was influenced to do so by Stoddard's claims that procuring the drugs would help (1) Stoddard's relationship with his new boss, and (2) Stoddard's dire financial situation.

Kaufman met with Stoddard's boss three times. At the first meeting, Kaufman delivered four LSD dosages and approximately one ounce of marijuana. Kaufman made two more deliveries to Stoddard's boss after this transaction. At the second, he delivered twenty dosage units of LSD and one and one-quarter ounce of marijuana. At the third, he delivered approximately one and one-quarter ounce of marijuana. In all, a total of $835.00 changed hands.

Kaufman was arrested on September 23, 1992, after the third transaction. Authorities executed a search warrant at his home. Among the articles they seized were (1) a small bag plus two plastic containers of marijuana, (2) Kaufman's collection of LSD blotters and common LSD units, (3) a vial of cocaine, (4) a roach clip, (5) a smoking bong, and (6) scales.

The State charged Kaufman in an eleven-count trial information. Seven of the counts dealt with delivery of the marijuana and LSD. Two counts dealt with failure to possess a tax stamp. *See* Iowa Code §§ 204.-401(1)(b)(5), 204.401(1)(d), 421A.3. Two conspiracy counts were later dismissed.

Shortly after the trial information was filed and before Kaufman's guilty plea, the prosecutor approached Kaufman with an offer. The offer was this: If Kaufman would pro-

vide information about his supplier, the State would recommend a ninety-day shock probation to the sentencing judge. Kaufman rejected the offer.

On December 31, 1992, Kaufman pleaded guilty to the nine remaining counts. While awaiting sentence, Kaufman waived his opportunity, in writing, to show cause why his license should not be temporarily suspended. *See* Iowa Sup.Ct.R. 118.14 (upon receipt of satisfactory evidence of felony conviction, attorney license may be temporarily suspended regardless of pendency of an appeal). In his letter to us, dated February 19, 1993, Kaufman conceded that it would be "totally inappropriate" for him to engage in the practice of law in his situation. He went on to ask that his license to practice law be suspended for a period of not less than two years and that at that time he be given the opportunity to demonstrate that he was recovered from his drug addiction.

On February 24, 1993, the district court sentenced Kaufman to concurrent terms of imprisonment not to exceed a total of twenty-five years.

Shortly after Kaufman was sentenced, the prosecutor obtained a subpoena to compel Kaufman to answer questions under oath about his supplier. Kaufman asserted his Fifth Amendment privilege against self-incrimination and refused to be sworn.

The prosecutor then procured a district court order granting Kaufman immunity from prosecution for relevant statements made during his sworn testimony. Again, Kaufman refused to be sworn to testify. He was then found in contempt and jailed. *See* Iowa Code § 665.2(4). His jail time for contempt was not credited to his sentence.

Kaufman did not challenge the contempt order. The district court released him from jail when the supplier pleaded guilty to the charges against him. Kaufman was then returned to prison to serve his twenty-five year sentence.

## II. *Procedural Background.*

On August 4, 1993, the committee filed a two-count complaint with the commission against Kaufman. Count I alleges that Kauf-

man's conviction of multiple felony counts is in violation of the Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(1), (3), (4), (5), and (6). Count II alleges that Kaufman's refusal to be sworn and testify after being granted immunity is in violation of DR 1–102(A)(1), (5), and (6) and DR 7–106(A).

The record made in the hearing before the commission includes the complaint, the committee's request for admissions which were not denied, the record from the criminal and contempt proceedings, Kaufman's testimony, and other evidence.

After finding that the allegations of the complaint were proven, the commission recommended the two year suspension and reprimand referred to earlier.

## III. *Scope of Review.*

Our review is de novo. *See* Iowa Sup. Ct.R. 118.10. We independently determine the matter and take appropriate action on it. *Id.* We may impose a lesser or greater sanction than that recommended by the commission. *Id.*

■ Because our review is de novo, the commission's findings—while considered—are not binding on us. The allegations in the complaint must be proven by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Sturgeon,* 487 N.W.2d 338, 341 (Iowa 1992).

■ Our determination of appropriate discipline is guided by the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and Kaufman's fitness to continue in the practice of law. *See id.*

## IV. *Findings of the Commission.*

A. *Count I.* Kaufman admitted all of the facts pertinent to count I of the complaint. He also admitted that he needed to be rehabilitated to be considered fit to practice law again in this state. The commission found—and we agree—that Kaufman violated DR 1–102(A)(1) (lawyer shall not violate a disciplinary rule); DR 1–102(A)(3) (lawyer shall not engage in illegal conduct involving moral tur-

pitude); DR 1–102(A)(5) (lawyer shall not engage in conduct prejudicial to administration of justice); DR 1–102(A)(6) (lawyer shall not engage in any conduct adversely reflecting on fitness to practice law).

B. *Count II.* We agree with the commission that Kaufman committed no ethical breach when he refused to cooperate with the prosecutor before sentencing. However, once Kaufman had been sentenced and granted immunity, he did have an ethical obligation to obey the court's order and testify. His refusal to do so is—as Kaufman admitted and the commission found—a violation of DR 1–102(A)(1) and DR 1–102(A)(5).

V. *Discipline.*

Iowa Code section 602.10122(1) makes it clear that conviction of a felony is a sufficient cause for revocation or suspension. The commission noted this statute, considered revocation, and rejected revocation in favor of a suspension and a reprimand. The commission cited these mitigating factors in support of its recommendation:

First, this is the respondent's first violation of the law or of any offense except perhaps a minor moving traffic offense. Second, the respondent has not injured the rights of any client by his conduct. Third, the actions of the respondent procuring and selling drugs were reluctant and incurred after numerous efforts by the State to have him engage in that activity and that said sale is not the result of his promotion of drugs nor of a sale for profit. Nor was it shown that he was instrumental in the procurement and maintenance of an illicit commerce in drugs on any scale small or large. Fourth, the respondent has admitted a personal addiction to marijuana and the commission believes that addiction has affected his ability to act responsibly in accordance with the law and the Code of Professional Responsibility. Alcohol addiction is not an excuse for misconduct; however, alcohol problems and an attorney's efforts to solve those problems is a factor among others to be considered when determining the fitness to practice law. Drug and alcohol abuse cannot be equated since drugs used here are contra-

band and alcohol can be legal in our society. The respondent's voluntary attempt to complete a treatment for his addiction in the view of the commission should be favorably considered in the recommendation.

■ In fixing an appropriate sanction, we are not insensitive to these factors the commission deemed mitigating. These factors, however, cannot overcome our clear responsibility to the public and the profession. Kaufman's transgressions, in addition to being tragic for him, were extreme and represent an unacceptable danger to the public we are sworn to protect. These transgressions also convince us that Kaufman does not possess the qualities of good character essential in an Iowa lawyer. Any fair comparison with sanctions in similar cases will show that revocation is demanded. *See, e.g., Sturgeon,* 487 N.W.2d at 340–42 (lawyer disbarred upon conviction of going armed with intent, a felony, and carrying a concealed weapon, an aggravated misdemeanor); *Committee on Professional Ethics & Conduct v. Green,* 285 N.W.2d 17, 18 (Iowa 1979) (conviction on guilty plea to reduced charge of an accommodation controlled substance offense, a serious misdemeanor, warranted revocation); *Committee on Professional Ethics & Conduct v. Hanson,* 244 N.W.2d 822, 823–24 (Iowa 1976) (lawyer's license revoked in large part for his possession of marijuana, and the purchase, possession, and intended accommodation distribution of what he thought were amphetamines). Kaufman's license to practice law is revoked.

Costs are assessed to Kaufman under Iowa Supreme Court Rule 118.22.

**LICENSE REVOKED.**