# IN THE SUPREME COURT OF IOWA

No. 13–0152

Filed June 14, 2013

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**DONALD N. LAING** and **D. SCOTT RAILSBACK,**

Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

In attorney disciplinary action, grievance commission recommends suspension for multiple violations of ethical rules, including charging and receiving excessive fees for services. **LICENSES SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

Donald N. Laing and D. Scott Railsback of Keota, pro se.

**HECHT, Justice.**

Attorneys Donald N. Laing and D. Scott Railsback provided conservator services to a ward over a period of more than three decades. The attorneys were later sued by the ward who alleged, and the district court found, the attorneys had charged and received excessive fees for their services. The Iowa Supreme Court Attorney Disciplinary Board (Board) charged the attorneys with multiple violations of the ethical rules governing the conduct of Iowa lawyers. A division of the Grievance Commission of the Supreme Court of Iowa found the attorneys violated the rules and recommended their licenses to practice law be suspended for at least three years. We suspend their licenses for a period of eighteen months.

## I. Scope of Review.

This court reviews attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012). The commission's recommendations receive our respectful consideration, but they do not bind us. *Id.* If we find a violation of an ethical rule has occurred, our determination of the appropriate sanction "is guided by the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and [the attorney's] fitness to continue in the practice of law." *Comm. on Prof'l Ethics & Conduct v. Kaufman*, 515 N.W.2d 28, 30 (Iowa 1994). The Board must prove its allegations of misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 366 (Iowa 2005).

## II. Factual Findings and Prior Proceedings.

Laing was appointed conservator for John T. Klein on May 21, 1974. Klein, a Vietnam War veteran, had a history of paranoid

schizophrenia, depression, and substance abuse. He needed the assistance of a conservator, having recently inherited 160 acres of farmland and other property from his mother's estate. Klein inherited from an aunt an undivided one-half interest in additional farm real estate in the early 1980s.[1] In 1993, he inherited from another aunt a certificate of deposit and other personal property valued at $56,947.58, and he became the life beneficiary of a trust corpus valued at $321,282.[2] Klein also owns a single lot in the state of Texas and a parcel of two acres the respondents acquired for him in an Iowa tax sale.

The respondents performed legal services in connection with a series of farm leases between the conservatorship and members of a farm family who had also long been the respondents' clients.

During the thirty-four years following his appointment in 1974, Laing served as Klein's conservator. Laing prepared annual reports of the conservatorship's status—with some assistance from Railsback, who joined Laing as a partner in the practice of law in 1975—and submitted them to the court for each of these years. The reports detailed the conservatorship's receipts and disbursements for the reporting period and summarized the status of the ward's assets, including an investment account managed by an investment firm. Each year Laing sought, and a district court judge entered, an order approving fees for the services provided by the respondents to the ward.

Among the services for which Laing and Railsback requested compensation were legal, accounting, and property management

---

[1]This land was partitioned in 1990 and Klein became the owner of a tract of eighty acres.

[2]Income from the trust is available for Klein's maintenance and support.

services, and, as we will detail below, other services typically performed by guardians rather than conservators.

At the time of Laing's appointment as conservator, Klein was undergoing outpatient mental health treatment in Boulder, Colorado. His illness presented significant challenges for his caretakers and the respondents. During Laing's years of service as conservator, residential care facilities in California, Colorado, and Connecticut provided Klein's care for varying periods of time. When Klein's behavior—including occasional acts of violence directed at care providers and others—was incompatible with the policies of residential treatment facilities housing him, when his health insurer refused to pay for care and treatment, and when he became dissatisfied with his accommodations and walked away, the respondents were involved in locating Klein and relocating him from one institutional setting to another or arranging independent residential quarters for him.[3]

During periods when Klein was living "independently" in Connecticut and Iowa, he encountered significant challenges, including allegations of criminal law violations, substantial difficulties managing his relationships with others, problems controlling the behavior of other persons present in his living environment, and persistent struggles with routine money management for his daily necessities.[4] These challenges, difficulties, problems, and struggles encountered by Klein—sometimes when he was situated at great distance from the respondents' law office

---

[3]When Klein ran away from a Connecticut treatment facility, he was found living in that state on a park bench. As no relative was available to retrieve Klein and secure proper living arrangements for him, the district court authorized Laing to do so.

[4]The respondents believed Klein was vulnerable to acquaintances who manipulated him to gain access to his motor vehicle and his money.

in Keota—also presented challenges for the respondents as they provided assistance.

In the seventh year of the conservatorship, the respondents submitted a claim for two hundred twenty-seven hours of services. The claim did not separate the hours spent performing legal services from the hours spent performing duties ordinarily performed by a conservator or guardian. In that reporting year, the respondents paid themselves for services from Klein's assets and reimbursed themselves for travel expenses they had advanced before such payments were approved by the court. The annual report disclosed these payments.

Klein had no legal guardian, and no relative stepped forward to undertake the responsibility. Klein's need for a guardian was clearly apparent by May 1983. In that month Laing filed the ninth annual conservatorship report and an application for compensation. These documents presented the respondents' claim that together they had spent more than three hundred hours serving Klein during the previous year, including one hundred twenty hours traveling to and from Connecticut to visit him at a treatment facility. Although the court initially entered an order approving the ninth annual report and the respondents' fees in the amount of $12,000 without notice to the ward or a guardian ad litem representing the ward, the court later reconsidered its decision and withdrew the order. The court appointed an interim conservator for Klein and scheduled a hearing with notice to the respondents, the interim conservator, and Klein's aunt. After considering the evidence presented at a hearing, the court again approved the annual report, but found the respondents had failed to show their trip to Connecticut was necessary. Accordingly, the court

reduced the respondents' compensation for conservators' and attorneys' fees to $8500.

Laing filed the tenth annual report and request for compensation in July 1984. The respondents' affidavits of compensation filed with this annual report revealed the total hours spent serving the respondent during the reporting period and requested payment at the rate of sixty dollars per hour, but did not separate the hours spent performing legal services from hours spent performing conservator services. The district court scheduled a hearing on the report and the respondents' request for compensation, and appointed a guardian ad litem to represent Klein at the hearing. Following the hearing, the court again found the respondents' claims for compensation were unreasonable. The court's ruling made the following observations:

> It is obvious from the outset that the conservator in this case is acting in a dual capacity, and this has caused some of the misunderstandings and problems which have arisen in regard to the allowance of fees. . . . As part of the tenth report, the conservator states that he believes the Court should appoint a guardian for the ward and that the conservator would decline to further serve in that capacity. Since the conservator has never been officially appointed as guardian, it would not be necessary for him to resign. A petition should be presented to the Court pursuant to Sections 633.552 of the Iowa Probate Code so a guardian may be properly appointed. The conservator testifies that there is no one else present and able to undertake these duties. . . . If the conservator determines that no one else is available and continues to serve in that capacity, he should at least segregate his accounts and time records so that separate applications could be presented to the Court.[5]

---

[5]Klein consistently opposed the appointment of a guardian during the respondents' years of service, apparently believing he did not need such assistance. He changed his position during his testimony before the grievance commission, however, and acknowledged his need for a guardian. Laing claims he tried without success over the years to find an appropriate person to serve as Klein's guardian, consulting the Veteran's Administration and representatives of a residential care facility for

The court disallowed the respondents' request for compensation for certain services provided and approved fees in an amount less than the respondents had already paid themselves from Klein's assets. The court's 1984 order therefore directed the respondents to repay Klein the sum of $2552.01 to rectify the overpayment.

Laing filed the eleventh annual report covering the period from May 21, 1984, to May 20, 1985, and requested fees for the respondents' services during that period. The respondents' itemized statement of services claimed a total of 50.35 hours for "legal work" and a total of 17.25 hours of "conservator type work." The district court again directed Laing to provide notice to Klein's guardian ad litem and scheduled a hearing on the report and the respondents' request for compensation. Following the hearing, the court approved payment of fees in the amount of $6686 and reimbursement in the amount of $69.48 for expenses advanced by the respondents.

Laing filed annual reports and requests for compensation for the twelfth through the thirty-third years of the conservatorship. Among the services for which the respondents sought and obtained compensation were those clearly of the type commonly performed by conservators: payment of expenses, banking transactions, preparation of annual reports, and the like. Many of the reports filed during this period, however, revealed the respondents had performed services that did not require legal training or asset management expertise. For example, the respondents sought and received payment for: transporting Klein to numerous medical appointments, taking him shopping for clothes and stereo equipment, assisting him in purchasing and delivering gifts for

nominations for appointment. Laing declined appointment as guardian, and he never filed an application invoking the court's authority to appoint someone else.

others, attending Klein's birthday parties, and accompanying him to a play and other outings for pleasure.

The annual reports were approved and fees were awarded to the respondents each year after 1985 in the amount they requested without notice to the ward or a guardian ad litem for the ward[6] and without a hearing. In each instance, one or both of the respondents discussed with a district court judge the status of the conservatorship and Klein's health. The respondents made themselves available to the court on these occasions to answer the court's questions regarding the services they had rendered for Klein since the previous reporting period.

The rates charged by the respondents for services they characterized as "conservator services" in the twelfth through the thirty-third reporting years steadily increased from $42 per hour in the earlier years to $125 per hour in the later years. The number of hours claimed during those years ranged from a low of 31.75 hours to a high of 236 hours in the thirty-third reporting year. As noted, many of the services did not require professional knowledge or skill and were of a type routinely performed by guardians at a much lower hourly rate. For example, in the thirty-first annual report, the respondents claimed 215 hours of conservator services at a rate of $100 per hour. That report claimed eighty hours for numerous round trips to Oskaloosa for the purpose of arranging a rental residence for Klein and moving his possessions into the house, shopping trips to Des Moines to purchase house furnishing items, measuring windows in the rental house for drapes, and selecting building materials for house cabinets. In Klein's action to remove Laing as conservator and recoup excessive fees, the

---

[6]The guardian ad litem appointed on August 8, 1984, apparently served until May 24, 1994, when he was discharged by an order of the district court.

district court found the reasonable hourly rate for such services was $15 per hour. We agree with the district court's finding and adopt it as our own.

The respondents also claimed unreasonable time and fees for the preparation of several of the annual reports. They claimed an average of between ten and fifteen hours for the preparation of the first eleven annual reports. But like their hourly rates, the number of hours the respondents claimed for preparation of the annual reports rose steadily over the years. When Laing filed the twenty-sixth annual report, he represented the respondents had spent seventy-six hours in its preparation.[7] The evidence established through expert testimony that preparation of the annual reports should not have required more than eight hours.[8]

The district court judge who signed most of the orders approving the annual reports and authorizing payment of the fees requested by the respondents from 1986 through 2007 testified that the procedure followed in the Klein conservatorship was consistent with his approach in other such matters. The judge routinely relied on the integrity of lawyers—practicing in that judicial district as officers of the court—to make claims for fees that were reasonable and proper under the circumstances.

Laing filed on July 21, 2008, the thirty-fourth annual report and request for fees covering the period from May 21, 2007, to May 20, 2008.

---

[7]Although Laing signed the annual reports as Klein's conservator, the respondents testified they both participated in performing the conservator's and legal services for which compensation was claimed from the late 1970s forward.

[8]The principal assets in the conservatorship were farm real estate leased for cash rent and securities managed by an investment firm. The investment firm's reports summarizing transactions conducted during the reporting period should have facilitated the conservator's preparation of the annual reports.

Klein appeared through separate counsel, objected to the conservator's annual report, and requested Laing's removal as conservator. Klein's new counsel also filed a separate petition alleging the respondents had engaged in fraud and deceit in requesting excessive fees and praying for restitution. The proceedings on Klein's objections to the conservator's annual report and the separate petition were consolidated for trial.

After a bench trial, the district court found the respondents had charged and received excessive fees for their services in the conservatorship.[9] In the first through nineteenth reporting years, the respondents claimed between ten and fifteen hours for the preparation of each annual report. Thereafter, their claims for this service ranged from a low of thirty hours to a high of seventy-six hours. The district court found the respondents had claimed excessive hours in the preparation of some of the annual reports and charged excessive hourly rates for other services that could have been performed by a competent legal secretary or paralegal.[10]

Noting that Klein had not been given notice of the annual reports or the respondents' applications for fees after 1985, and that no hearings were held prior to the entry of the related orders in years 1986 (the twelfth annual report) through 2006 (the thirty-third annual report), the court reset the respondents' fees for those years and entered judgment against the respondents in the amount of $175,511.60.[11]

---

[9]The district court did not find the respondents had engaged in fraud, deceit, or misrepresentation.

[10]In finding excessive the hours of service claimed by the respondents for conservator services, the court noted, as we have, that the ward's farmland was cash-rented and his stock portfolio was managed by an investment firm.

[11]The district court judge who presided at the trial forwarded a copy of her findings of fact, conclusions of law, judgment and decree to the Board.

The respondents appealed the judgment and Klein cross-appealed. We transferred the appeal to the court of appeals, which affirmed the district court judgment as modified, increasing the judgment against the respondents to $178,497.91. The respondents' request for further review was denied by this court.

The Board filed a complaint alleging the respondents (1) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation prior to July 1, 2005, in violation of DR 1–102(A)(4) of the Iowa Code of Professional Responsibility and in violation of rule 32:8.4(c) of the Iowa Rules of Professional Conduct after July 1, 2005; (2) engaged in conduct that was prejudicial to the administration of justice in violation of DR 1–102(A)(5) of the Iowa Code of Professional Responsibility prior to July 1, 2005, and in violation of rule 32:8.4(d) of the Iowa Rules of Professional Conduct after July 1, 2005; (3) collected clearly excessive fees in violation of DR 2–106(A), (B) of the Iowa Code of Professional Responsibility prior to July 1, 2005, and in violation of rule 32:1.5(a) of the Iowa Rules of Professional Conduct after July 1, 2005; (4) continued employment as conservator or attorney for the conservator under circumstances presenting a conflict of interest prior to July 1, 2005, in violation of DR 5–105(C) of the Iowa Code of Professional Responsibility and after July 1, 2005, in violation of rule 32:1.7 of the Iowa Rules of Professional Conduct.

Following a hearing on the allegations in the Board's disciplinary complaint, the commission found the respondents had claimed excessive hours and charged excessive fees for legal services and conservator's services in violation of DR 2–106(A), (B) and rule 32:1.5(a). The commission further found the respondents' course of conduct in claiming excessive hours for services and charging excessive fees constituted

dishonesty, fraud, deceit, or misrepresentation reflecting adversely on their fitness to practice law in violation of DR 1–102(A)(4), (6) and rule 32:8.4(c), and constituted conduct prejudicial to the administration of justice, in violation of DR 1–102(A)(5) and rule 32:8.4(d). The commission also found the respondents had violated DR 5–105(C) and rule 32:1.7 in performing legal services in connection with consecutive leases of Klein's farm real estate to another of the respondents' clients—transactions presenting a conflict of interest. The commission recommended the respondents' licenses be suspended for at least three years.

### III. Violations.

We find the Board has proved by a convincing preponderance of the evidence that the respondents charged and submitted claims for clearly excessive fees in the Klein conservatorship. The excessiveness of the fees arose from the respondents' claims of unreasonable time expended for management of Klein's assets, drafting annual conservator's reports, and preparing tax returns. The Board also proved by a clear preponderance of the evidence that the respondents charged excessive hourly rates for performing a wide array of services not requiring legal training or other professional skills and commonly performed at a much lower cost by guardians. We therefore find the respondents violated DR 2–106(A) and (B) for such conduct prior to July 1, 2005, and violated rule 32:1.5(a) for similar conduct after that date. As we find incredible the amount of time the respondents consistently claimed for preparation of annual reports and tax returns in the twelfth through the thirty-third years of the conservatorship, we conclude the respondents engaged in misrepresentation in violation of

DR 1–102(A)(4) prior to July 1, 2005, and rule 32:8.4(c) after July 1, 2005.

In misrepresenting the time devoted to services for the conservatorship and charging excessive fees for their work, the respondents also engaged in conduct that was prejudicial to the administration of justice in violation of DR 1–102(A)(5) and rule 32:8.4(d). Their conduct resulted in litigation for the removal of the conservator and restitution of the excessive fees obtained from the ward's estate.

We also find the Board met its burden of proof in establishing that the respondents violated DR 5–105(C) and rule 32:1.7 by representing the conservatorship in negotiating and drawing a series of farm leases renting Klein's land to another client of the respondents' law firm. Although the respondents believed they represented only Klein in the lease transactions, and not the tenant, the circumstances surrounding the transactions made it likely the respondents' independent professional judgment on behalf of Klein was prone to be adversely affected. We find no evidence that the respondents took the precautions of full disclosure of the possible effect of such representation on their exercise of independent judgment as required by DR 1–105(D) and rule 32:1.7(b)(4).

### IV. Sanction.

We give respectful consideration to the grievance commission's recommendation concerning the appropriate sanction for an attorney's ethical violations. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Waples*, 677 N.W.2d 740, 743 (Iowa 2004). Nevertheless, we are free to impose a lesser or greater sanction than the discipline recommended by the grievance commission. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Reilly*, 708 N.W.2d 82, 84 (Iowa 2006).

In selecting the appropriate sanction for ethical infractions, we consider

> the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 164 (Iowa 2003). In determining the appropriate sanction, "we look to prior similar cases while remaining cognizant of their limited usefulness due to the variations in their facts." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 62 (Iowa 2009).

We have imposed suspensions ranging from sixty days to two years for violations of the rule prohibiting excessive fees. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carty*, 738 N.W.2d 622, 625 (Iowa 2007) (suspending for sixty days license of attorney who claimed extraordinary probate fee for conduct compensated by ordinary fee); *Comm. on Prof'l Ethics & Conduct v. Zimmerman*, 465 N.W.2d 288, 291–93 (Iowa 1991) (suspending for six months the license of attorney who requested fee bearing no rational relationship to services rendered by the conservator and sought excessive fees for legal services that duplicated fees sought for conservator's services); *Comm. on Prof'l Ethics & Conduct v. Coddington*, 360 N.W.2d 823, 826 (Iowa 1985) (suspending for two years the license of attorney who, while serving as conservator, paid fees to himself before obtaining court approval and took additional fees that were never approved by the court). The appropriate sanction in this case must, in our view, approach the high end of this range because the

respondents' serial violations of multiple ethical rules were committed over a long period of time.

Aggravating and mitigating circumstances are factors affecting our determination of the appropriate sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman*, 637 N.W.2d 183, 187 (Iowa 2001). The respondents are experienced lawyers, having focused their practice in the areas of probate, real estate, and tax law since the 1970s. Laing testified at the hearing before the commission that he could think of no errors or mistakes made by the respondents in serving the Klein conservatorship for more than three decades. Like the commission, we view the respondents' profound and persistent lack of awareness of and responsibility for the excessiveness of their fees as an aggravating factor.

We also find mitigating factors affecting our judgment in this case. As we have noted, Klein's illness and resulting volatility posed significant, complex, and time-consuming challenges for the respondents. We find plausible the respondents' contention that there was a limited universe of people capable of managing Klein's residential requirements,[12] health care needs,[13] and other routine matters of daily living.[14] The respondents are entitled to some credit for "filling the gap" when no relative did. In his testimony at the hearing before the commission, Klein candidly admitted the respondents had been extremely helpful to him

---

[12]As we have noted, Klein's behavior occasionally made him unwelcome at some residential treatment facilities. Dissatisfied from time to time with his living circumstances in residential care environments, he would walk away and require relocation assistance.

[13]Klein needed assistance in comprehending and communicating to residential care providers the treatment recommendations of his mental health providers. Laing was appointed Klein's medical representative in the late 1970s.

[14]Klein had numerous traffic accidents and required assistance in obtaining repair and storage services for his car, an asset he apparently valued highly.

over the years and consistently responded to his requests for much-needed assistance of all types.[15] We are convinced the respondents sincerely attempted to make Klein's life better when no family member stepped forward to help. They clearly went wrong, however, in repeatedly over-reaching in their applications for fees for services to a vulnerable ward who was disabled and kept uninformed of the amounts they were charging for their services. We do not view as a mitigating factor the district court's approval of the respondents' fee applications under the circumstances presented here. *See Coddington*, 360 N.W.2d at 826 (suspending license of lawyer who revealed in his annual conservator's reports that he had taken excessive fees in advance of court approval).

Having reviewed the record, considered the factors affecting the determination of the appropriate sanction, and explored the aggravating and mitigating features of this case, we conclude the respondents' licenses should be suspended for eighteen months. The suspension imposed applies to all facets of the practice of law as provided by Iowa Court Rule 35.13(3) and requires notification of the respondents' clients as provided by Iowa Court Rule 35.23. The respondents shall make restitution to Klein as required by the judgment against them and no reinstatement shall be ordered until the judgment is satisfied. The costs of this proceeding are taxed against the respondents pursuant to Iowa Court Rule 35.27(1).

**LICENSES SUSPENDED.**

All justices concur except Mansfield, J., who takes no part.

---

[15]The primary source of Klein's unhappiness with Laing was his unwillingness to give Klein more than five dollars per day to buy energy drinks and cigarettes.