# IN THE SUPREME COURT OF IOWA

No. 19–1934

Filed May 22, 2020

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MICHAEL D. KOZLIK,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In attorney disciplinary action, grievance commission recommends suspension for violations of ethical rules. **LICENSE REVOKED.**

Tara van Brederode and Allison Schmidt, Des Moines, for complainant.

Drew Kouris, Council Bluffs, for respondent.

**McDONALD, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Michael D. Kozlik. The complaint alleged Kozlik violated Iowa Rules of Professional Conduct 32:8.4(b) and 32:8.4(c) while acting as the administrator of his uncle's estate. A division of the Iowa Supreme Court Grievance Commission found the Board failed to prove a violation of rule 32:8.4(b) and dismissed that complaint. The commission found the Board proved Kozlik violated rule 32:8.4(c) and recommended a public reprimand as the sanction. We find and conclude Kozlik violated rules 32:8.4(b) and (c) by misappropriating funds from the estate without a future colorable claim to said funds. We revoke Kozlik's license to practice law in the State of Iowa.

I.

Michael Kozlik was admitted to practice law in Nebraska in 1979 and in Iowa in 2000. His law office is located in Omaha. Kozlik's primary practice is estate planning and administration. He has served as the personal representative in a number of estates. He has served as an expert witness on probate fees in proceedings in Nebraska. While Kozlik primarily practices law in Nebraska, he has performed probate work on this side of the river.

The ethical violations in this case arise out of Kozlik's service as the administrator of his uncle's estate. Duane and Frances Slightam, Kozlik's uncle and aunt, had no children of their own. They were very close to their nephews Kozlik and his brother Doug. Kozlik spent a great deal of time with his uncle and aunt, helped them on their farm, and even considered them his second parents. Toward the end of their lives, Duane and Frances began to lose their ability to live independently. Kozlik and other family members convinced Frances that Duane had to move to a care

facility in 2013. Kozlik was appointed Duane's guardian, and Treynor State Bank (TS Bank) was appointed Duane's conservator.

Duane passed away in June 2015, and Frances was the sole beneficiary of his estate. Attorney Leo Martin opened Duane's estate in March 2016 in Pottawattamie County. Kozlik was appointed administrator of Duane's estate, and TS Bank was appointed executor. Mary Jewell, a trust officer at TS Bank, served as the representative of TS Bank.

Six months after Duane's estate was opened, Kozlik began to write checks from the estate's bank account to himself. Over the next two years Kozlik wrote a total of twelve checks on the estate's account made payable to himself in the total amount of $39,350.

| Date of Check | Check # | Amount |
|---|---|---|
| 11/23/16 | 1001 | 900 |
| 11/23/16 | 1002 | 150 |
| 2/03/17 | 1004 | 2500 |
| 6/05/17 | 1005 | 1500 |
| 6/23/17 | 1006 | 1500 |
| 6/27/17 | 1007 | 10,000 |
| 9/08/17 | 1008 | 3500 |
| 9/29/17 | 1009 | 5000 |
| 2/28/18 | 1012 | 5000 |
| 6/08/18 | 1016 | 3500 |
| 6/13/18 | 1017 | 2300 |
| 9/25/18 | 1018 | 3500 |
| **TOTAL** | | $39,350 |

According to Kozlik, all but one of the withdrawals was for fees earned and expenses incurred in the administration of Duane's estate. The one exception was a withdrawal in the amount of $10,000 in June 2017. According to Kozlik, he paid himself that money as a deduction to the estate to offset $43,000 in interest income the estate had earned upon cashing government bonds. Kozlik testified that, as it turned out, the estate did not need the deduction so he repaid it. However, Kozlik returned

only $9700 of those funds to the estate's account in December 2017. Kozlik did not obtain court authorization prior to making any of these payments to himself.

Kozlik testified two or three of the checks were deposited into his personal checking account and the remainder into his operating account at his law firm. He testified he used the funds "for paying bills and living expenses" and for expenses and disbursements related to his law practice.

The unauthorized payments came to light at the end of 2018. Frances passed away in April 2018. Her will was admitted to probate later that month. Christopher Juffer served as the attorney for Frances's estate, and TS Bank served as the executor. Because Frances was Duane's sole beneficiary and because Duane's estate was still pending, TS Bank needed additional information from Duane's estate to prepare an inventory and report in Frances's estate. Juffer filed two delinquency notices in Duane's estate, alleging "substantial delays in the finalization" of Duane's estate. Juffer filed a petition in November 2018 to remove Kozlik as administrator of Duane's estate, to obtain records from Duane's estate, and for an accounting of Duane's estate. Martin, the attorney for Duane's estate, immediately contacted Kozlik and Juffer to make arrangements to prepare the requested documents. When Martin reviewed the documents Kozlik sent to him, Martin discovered the unauthorized payments Kozlik had made to himself. Martin quickly contacted Kozlik. Kozlik did not make any excuses and took full responsibility for his conduct.

Shortly thereafter, in December 2018, Martin arranged a meeting attended by Martin, Kozlik, Juffer, and Jewell. At the December meeting, Martin did most of the talking, but Kozlik admitted to making payments to himself from Duane's estate without court authorization. Kozlik provided copies of all the documentation regarding the payments and the

lone deposit related to the return of funds allegedly paid for tax planning purposes. Kozlik stated he did not know he needed a prior court order when he made the payments, but he understood it now. Kozlik promised to repay all of the unauthorized payments with interest. He apologized and admitted he committed an ethical violation. Kozlik stated he was going to self-report to the Iowa State Bar Association and to the Iowa Supreme Court. Kozlik repaid the funds to Duane's estate within two weeks of the meeting.

After Kozlik repaid the funds to Duane's estate, there were additional proceedings in the pending matter. As noted above, in November 2018, Juffer had filed a petition to remove Kozlik as the administrator of Duane's estate. Kozlik did not resist the petition, and the court removed him as administrator of the estate in March 2019. The order removing Kozlik as administrator of the estate found "Kozlik does not dispute the allegation that he inappropriately removed funds from the Estate of Duane Slightam." The court found Kozlik had mismanaged the estate, and the court appointed TS Bank as succeeding administrator.

There was also the additional matter of Kozlik's fees for the administration of Duane's estate. Pursuant to Code section 633.197, the ordinary fee for Duane's estate was capped at $9263.37. *See* Iowa Code § 633.197 (2017) (limiting reasonable fees for personal representatives). Kozlik filed an application for a personal representative fee for reasonable services in this amount plus reimbursement for actual and necessary expenses in the amount of $1223.69, for a total request of $10,487.06. Juffer, on behalf of Frances's estate, objected to the fee request. At the hearing on fees, Juffer testified he believed Kozlik stole funds from Duane's estate. Juffer testified, based on his dealings with Kozlik, that Kozlik "knew he was not supposed to take money from the estate. He continually

took money from the estate. He knew he was not entitled to it." In May 2019, the district court awarded Kozlik ordinary fees in the amount of $4631.69 (half of the requested amount) plus expenses for a total of $5855.38.

While these matters in Duane's estate were being litigated and resolved, the ethical complaint moved forward. Kozlik did in fact self-report the unauthorized payments from the estate. The day after the December meeting with Martin, Juffer, and Jewell, Kozlik addressed a letter to the Iowa State Bar Association. He stated, "I am the administrator of my uncle's estate. I paid myself administrator fees without prior court order." The Iowa State Bar Association forwarded the letter to the Board.

The Board filed this complaint against Kozlik. The complaint alleged Kozlik knowingly converted funds in violation of Iowa Code sections 714.1(2) and 714.2(2). The complaint charged Kozlik with violating Iowa Rules of Professional Conduct 32:8.4(b) (committing "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer") and (c) (engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation"). The complaint provided Kozlik with notice the Board sought revocation of his license as a possible sanction.

At the commission hearing, Kozlik admitted he committed an ethical violation. One of the commissioners asked Kozlik what rule he believed he had violated. He answered, "I should not have taken money out prior to getting a court order." He further stated, "I paid myself fees out of Duane's account. I should have gotten a prior court order allowing them. It's an ethical violation." However, Kozlik denied he had committed the ethical violations charged.

> Q. Your position at this hearing, though, is that you did not violate either of the rules that the Board is alleging you violated, though; is that correct? A. Well, I think they have

to prove that I had a mental intent to steal and that was never the case. It's called scienter. Unless they prove scienter, their case fails. I think the testimony was from both Leo [Martin] and Mary [Jewell] that they never believed that I was stealing. I never had an intent to steal. In fact, I always had the intention of disclosing. That's one of the reasons why I used checks. I didn't use an ATM.

Was it dumb for me to do it without the court order? Amen, Brother. That's me. I'm the poster child for that. I admit that freely. Did I deceive anyone? Without deception— the second allegation there has to be a deception or a cover-up. No evidence of a cover-up or a deception.

Q. So your position then is that you did violate the ethical rules, they just haven't alleged the right ethical rules that you violated; is that right? A. I'm saying we're responding to what they alleged. I'm not going out looking for ethical rules to be violated. I'm not going to do their work for them. Come on. I've already fessed up. What more do you want me to do?

On Kozlik's motion for directed verdict, the commission found "the evidence does not establish that the Respondent committed any criminal act that reflected adversely on his honesty, trustworthiness or fitness as a lawyer." The commission dismissed the complaint based on Kozlik's alleged violation of rule 32:8.4(b). The commission did find Kozlik's unauthorized fee payments violated rule 32:8.4(c). The commission recommended Kozlik receive a public reprimand. The Board contends suspension of Kozlik's license is an appropriate sanction.

II.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 489 (Iowa 2018). "The Board must prove ethical violations by a convincing preponderance of the evidence." *Id.* "A convincing preponderance of the evidence lies between the preponderance-of-the-evidence standard in a civil case and the reasonable-doubt standard in a criminal case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noyes*, 936 N.W.2d 440, 442 (Iowa 2019). We give the commission's findings "respectful consideration, but

we are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 696 (Iowa 2014).

"We may impose a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation." *Mathahs*, 918 N.W.2d at 489. If we conclude there has been a rule violation, "our determination of the appropriate sanction 'is guided by the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and [the attorney's] fitness to continue in the practice of law.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Laing*, 832 N.W.2d 366, 367–68 (Iowa 2013) (alteration in original) (quoting *Comm. on Prof'l Ethics & Conduct v. Kaufman*, 515 N.W.2d 28, 30 (Iowa 1994)).

III.

At issue here are alleged violations of Iowa Rules of Professional Conduct 32:8.4(b) and (c). These rules apply to an attorney's conduct in both his professional and nonprofessional capacities. *See* Iowa R. Prof'l Conduct ch. 32 Preamble & Scope [3] (identifying rule 32:8.4 as a rule that applies to lawyers acting in a nonprofessional capacity and stating, "For example, a lawyer who commits fraud in the conduct of a business is subject to discipline for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation").

Rule 32:8.4(b) provides, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects[.]" *Id.* r. 32:8.4(b). "We have stated that '[a] lawyer who commits a theft of funds engages in conduct involving moral turpitude, dishonesty, and conduct that adversely reflects on the lawyer's fitness to practice law.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Den Beste*, 933 N.W.2d 251, 254 (Iowa 2019) (quoting

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 741 (Iowa 2013)). However, "[a] lawyer need not be charged or convicted of a crime in order to be found in violation of this rule." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 222 (Iowa 2015).

Rule 32:8.4(c) provides, "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]" Iowa R. Prof'l Conduct 32:8.4(c). To prove a violation of this rule, "the Board must show 'the attorney acted with some level of scienter greater than negligence' " or incompetence. *Cross*, 861 N.W.2d at 221 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 421 (Iowa 2012)); *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 587 (Iowa 2019). Scienter is satisfied where an attorney acted knowingly, intentionally, or with the aim to mislead. *See Ricklefs*, 844 N.W.2d at 698–99. An attorney's "casual, reckless disregard for the truth" also establishes sufficient scienter to support a violation of the rule. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 656 (Iowa 2013) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 109 (Iowa 2008)).

On de novo review, we conclude a convincing preponderance of the evidence shows Kozlik violated both rules. As the administrator of his uncle's estate, Kozlik owed a fiduciary duty to the estate. *See* Iowa Code § 633.160; *id.* § 633.197; *Burns v. Nemo*, 252 Iowa 306, 311, 105 N.W.2d 217, 220 (Iowa 1960) ("A person holding the relationship of a fiduciary has a duty to act for the cestui's benefit within the scope of the relationship."). The estate's funds were held in trust for the administration of the estate and the beneficiary of the estate, Frances. Over the course of two years, Kozlik made unauthorized payments out of the estate's account to himself in the amount of $39,350. Kozlik testified he deposited the funds into his

personal checking account and his operating account at his law firm. He returned $9700 of the funds to the estate's account prior to his self-payments being discovered. Kozlik used the remainder of the funds to pay personal bills and living expsenses and to pay expenses and disbursements related to his law practice. The misappropriation of funds is a clear violation of both rules. *See* Iowa Code § 714.1(2) ("A person commits theft when the person . . . [m]isappropriates property which the person has in trust . . . whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust . . . ."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Muhammad*, 935 N.W.2d 24, 38 (Iowa 2019) (holding misappropriation of client funds violated rule 32:8.4(b) and (c)); *Den Beste*, 933 N.W.2d at 254–55 (holding misappropriation of law firm funds violated rules 32:8.4(b) and (c)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 933 N.W.2d 206, 213 (Iowa 2019) (holding misappropriation of client funds for personal purposes violated rules 32:8.4(b) and (c)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 926 N.W.2d 553, 556–57 (Iowa 2019) (holding misappropriation of employer funds by attorney working as an accountant for employer violated rules 32:8.4(b) and (c)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 232–33 (Iowa 2014) (holding attorney misappropriation of estate funds violated rules 32:8.4(b) and (c)) and stating "any form of conversion of client funds violates our rules of professional conduct").

At the commission hearing, Kozlik argued that the unauthorized payments were an honest mistake and that he lacked the requisite intent to commit theft or misappropriation of the estate's funds. At the commission hearing, when asked why he made payments to himself without a court order, Kozlik replied, "The honest answer is I didn't know

I needed a court order." Kozlik contended he did not know the payments were improper because Nebraska law does not require an administrator to obtain court approval prior to payment. He testified he primarily practices in Nebraska and was merely following Nebraska law in the administration of the estate.

We find Kozlik's testimony unconvincing and argument unavailing for a variety of reasons. Kozlik's testimony and contention that he did not know he needed court authorization prior to payment rings hollow. Kozlik has been licensed to practice law in Iowa since 2000. He practices primarily in the area of estate planning and administration. He has attended numerous CLEs in the relevant area. He has worked as a lawyer and administrator on many matters. Indeed, the evidence shows Kozlik worked on other cases in Iowa in which he acknowledged the relevant statutes and sought court approval of fees prior to payment. In the Bilunas estate, Kozlik served as the attorney for the personal representative of an estate. Kozlik filed an application for an order for personal representative fees. In the fee application, Kozlik requested fees for the personal representative "in the amount of $7,200, which is the maximum allowable amount pursuant to Iowa Code Section 633.197." In the Duffy estate, Kozlik filed another document in which he acknowledged "fees for ordinary services were fixed by the Court, pursuant to Iowa Code sections 633.197 and 633.198." When pressed on this issue during the commission hearing, Kozlik testified he did not know what he was doing and just filled out forms as directed by the judge in the Iowa probate cases. In light of his forty years of experience as an attorney and twenty years of experience in Iowa, Kozlik's denial of a rudimentary understanding of Iowa probate law falls flat. Kozlik's prior legal work in Iowa probate cases

demonstrates he was well aware of the statutory requirement that he obtain court approval prior to the payment of administrator fees.

We also note Kozlik's testimony and contention that the unauthorized payments were for earned fees does not square with the facts. At the commission hearing, Kozlik introduced into evidence an exhibit showing his time entries and expenses associated with the administration of the estate. In addition to his itemized time entries, Kozlik noted there was an additional 24.1 hours of unitemized time he spent on the administration of the estate. Kozlik testified he did not have itemized time entries for this additional time because his time sheets were lost or stolen. Kozlik testified his total time and expenses amounted to $33,623.93. Comparing the dates and amounts of the unauthorized payments to Kozlik's time and expense reports shows the unauthorized payments had absolutely no relationship to the fees allegedly earned and expenses allegedly incurred in this matter. For example, in November 2016, Kozlik wrote two checks to himself in the total amount of $1150. However, Kozlik's itemized billing statements, if accepted as true, show he had earned fees in the amount of $15,907.50. During the period between November 2016 and February 2017, Kozlik wrote a single check to himself in the amount of $2500, but his billing statements show only $607.50 in fees and $6.27 in expenses in the relevant time period. The remainder of the payments and billing statements show the same miscorrelation between the unauthorized payments and the fees allegedly earned and expenses allegedly incurred.

In similar circumstances we have concluded the lack of any relationship between withdrawals and fees disproved the attorney's claim the withdrawals were related to the fees. *See, e.g., Comm. on Prof'l Ethics & Conduct v. Coddington,* 360 N.W.2d 823 (Iowa 1985). In *Coddington,* the

attorney served as a conservator. *Id.* at 824. The attorney "paid himself a total of $33,600 from the conservatorship funds." *Id.* All of the funds were paid to the attorney without court authorization. *Id.* Subsequently, the court issued fee orders approving $18,600 in fees. *Id.* The attorney was charged with violating a number of disciplinary rules, including DR 1–102(A), which provided a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* at 825 (quoting Iowa Code of Prof'l Responsibility for Lawyers DR 1–102(A)). The attorney argued the payments were merely evidence of "negligence or careless accounting." *Id.* We rejected the contention, concluding "that the withdrawals of 'fees' were frequent and seemed to have little relationship to any amount actually owed at the time or to the court orders entered in regard to fees." *Id.*

"Proving a person's state of mind is difficult." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 138–39 (Iowa 2009). A person's intent may be inferred from the circumstances. *Id.* When making those inferences in this case, we do so understanding that lawyers have specialized knowledge:

> More than this, the law takes account of a lawyer's legal training and experience in assessing his or her state of mind. A lawyer is an adult, a man or woman of the world, not a child. He or she is also better educated than most people, more sophisticated and more sharply sensitized to the legal implications of a situation. The law will make inferences as to a lawyer's knowledge with those considerations in mind.

*Id.* (quoting 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 1.23, at 1–46 (3d ed. 2005–2 Supp.)). Here, the circumstantial evidence shows by a convincing preponderance of the evidence that Kozlik misappropriated funds from Duane's estate and used those funds to pay his personal and business expenses.

This brings us to the question of sanctions. Misappropriation of funds held in trust "results in revocation, except in instances in which the attorney had a colorable future claim to the funds or did not take the funds for personal use." *Carter*, 847 N.W.2d at 232. The colorable-future-claim defense exists to distinguish "for purposes of sanctions between conduct involving trust fund violations and conduct in the nature of stealing." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 359 (Iowa 2013). "Thus, the defense generally permits an attorney to avoid revocation of a license to practice law when . . . funds are converted for payment of . . . fees before the fees have been earned or approved." *Carter*, 847 N.W.2d at 233. "[A]n attorney in a disciplinary proceeding bears the burden of coming forward with evidence of a colorable future claim, but the burden to prove conversion remains with the Board." *Id.* at 232–33. The fact that this case involves nonclient funds as opposed to client funds is immaterial in this case. *See Den Beste*, 933 N.W.2d at 257 (noting "the time has come" to lessen distinction between cases involving theft of client funds and theft of nonclient funds); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carroll*, 721 N.W.2d 788, 792 (Iowa 2006) ("[W]e [have not] been deterred from revoking a lawyer's license because the funds converted were not client funds or because the attorney was not acting in the capacity of an attorney at the time of the misconduct.").

Several considerations lead us to conclude Kozlik had no colorable future claim to the funds he paid himself out of the estate's account. First, Kozlik's claim that he had a colorable future claim to the misappropriated funds is implausible on its face. Pursuant to Iowa Code section 633.197, the ordinary fee for Duane's estate was capped at $9263.37 plus actual and necessary expenses. The evidence shows Kozlik had filed applications for fees in other Iowa probate matters in which he specifically

acknowledged the statutory cap for ordinary fees. The evidence shows, however, Kozlik made payments to himself for alleged fees earned and expenses incurred in the amount of $29,350 or more than three times the scheduled amount for ordinary fees.

But there is nothing in this record supporting the contention Kozlik would have been entitled to extraordinary fees in the administration of his uncle's estate. *See* Iowa Code § 633.199 (identifying factors in determining whether fees for extraordinary services should be awarded). Kozlik did not spend an extraordinary amount of time in the administration of the estate. *See id.* § 633.199(1). The estate had only a single beneficiary—Frances. There were no legal issues to be resolved. There was no litigation involved. There were no tax issues to be resolved. There were no complex issues presented. *See id.* § 633.199(3). To the contrary, multiple witnesses testified at the commission hearing that the estate was not complex at all. Juffer testified the estate was "very, very simple." The judge who presided over the fee hearing testified "[i]t just wasn't a complicated estate." Kozlik's contention that he had a colorable claim to $29,350 in fees for the administration of his uncle's "very, very simple" estate is implausible given the statutory cap for ordinary administrator fees.

Also, as discussed above, Kozlik's unauthorized payments to himself did not at all correlate to the fees he allegedly earned or the expenses he allegedly incurred. This miscorrelation between the unauthorized payments and the itemized statements belies Kozlik's contention that the unauthorized payments were bona fide payments for fees on an ongoing basis. We reached a similar conclusion in *Carter*.

In *Carter*, the attorney deposited an estate's funds in his law office trust account. 847 N.W.2d at 230. The attorney withdrew some of the deposited funds. *Id.* The board charged the attorney with violations of

rule 32:8.4(c) among others. *Id.* at 230–31. The attorney asserted a colorable claim defense and argued "he performed legal services for the executors in the [estate] matter that entitled him to a fee. He also claim[ed] the loss of his billing records prevented him from showing the amount of the fee he earned, but assert[ed] there was no evidence offered by the Board to show he did not do any work to earn the amounts he withdrew from the trust account." *Id.* at 233. We rejected the colorable-claim defense and concluded revocation was appropriate. *Id.* at 234. We reasoned,

> In the [estate] matter, Carter converted funds from his trust account that were not held as a retainer or advance fee. They were funds of the estate that could only be used as attorney fees if approved by the court. Additionally, Carter converted the funds at times that were inconsistent with an intent to take the funds as estate fees. The evidence further supported a finding that the amount of funds converted by Carter had no relationship to an amount that would be actually earned. Under these circumstances, the evidence failed to support a colorable future claim to avoid revocation. A colorable future claim to nonretainer funds does not involve a bare claim that some of the converted funds would have been earned. In essence, that is the claim asserted by Carter. Moreover, we have made it clear that conversion does not depend on the amount of funds converted.

*Id.* at 234 (emphasis omitted).

This case is also similar to *Iowa Supreme Court Attorney Disciplinary Board v. Kelsen*, 855 N.W.2d 175 (Iowa 2014). There, the board charged Kelsen with several disciplinary violations arising out of the management of his trust account. *Id.* at 179. The commission found Kelsen violated all the rules alleged in the complaint and recommended a public reprimand. *Id.* at 177. We found Kelsen violated all of the rules alleged and "among those violations, Kelsen converted $7500 of client funds to personal use without a colorable future claim to the funds." *Id.* We explained Kelsen's colorable future claim was not credible for a variety of reasons, including

the fact the retainer from which Kelsen withdrew funds was a limited use retainer for costs and not a fee retainer. *Id.* at 185. Similarly, Kozlik's claim that the payments to himself in this case were earned fees or he had a colorable future claim to the funds is not credible.

As the administrator of his uncle's estate, Kozlik owed a fiduciary duty to the estate. *See* Iowa Code § 633.160. Kozlik breached that fiduciary duty when he paid himself funds from his uncle's estate without a colorable claim or colorable future claim to the funds. Revocation is required where an attorney, acting as a fiduciary, misappropriates funds. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kowalke,* 918 N.W.2d 158, 163 (Iowa 2018) ("[W]e have found revocation appropriate 'in nearly every case where an attorney converts client funds without a colorable claim.' " (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Guthrie,* 901 N.W.2d 493, 500 (Iowa 2017))); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Suarez-Quilty,* 912 N.W.2d 150, 159–60 (Iowa 2018) (revoking the license of an attorney who converted $630 without a colorable future claim); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams,* 809 N.W.2d 543, 546 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wengert,* 790 N.W.2d 94, 104 (Iowa 2010); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley,* 774 N.W.2d 301, 308–09 (Iowa 2009); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo,* 710 N.W.2d 226, 236–37 (Iowa 2006); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Reilly,* 708 N.W.2d 82, 85 (Iowa 2006); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson,* 687 N.W.2d 587, 590 (Iowa 2004); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Irwin,* 679 N.W.2d 641, 644 (Iowa 2004) ("[I]t is almost axiomatic that the licenses of lawyers who convert funds entrusted to them should be revoked."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett,* 674 N.W.2d 139, 144–45 (Iowa 2004); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Leon,* 602 N.W.2d

336, 339 (Iowa 1999). When an attorney converts funds without a colorable future claim, "we need not consider mitigating and aggravating factors that may be present." *Guthrie*, 901 N.W.2d at 500.

### IV.

We revoke Kozlik's license to practice law in the State of Iowa. Pursuant to our rules, Kozlik may apply for readmission after a period of at least five years. *See* Iowa Ct. R. 34.25(7). In the event of application for readmission, Kozlik must demonstrate that he is "of good moral character" and "worthy of readmission to the bar." *See id.* r. 34.25(9). Kozlik must also pay all fees. *See id.* r. 34.25(9)(*d*), (*f*).

**LICENSE REVOKED.**